UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WAYNE D. GARRETT, JR.
and TRACEY C. MARTIN,
 on behalf of themselves and
all others similarly situated,

                Plaintiffs,

                v.                                        NO. 3:11-cv-00298-JAG-DJN

MARGOLIS, PRITZKER,
EPSTEIN & BLATT, P.A.,
and STUART R. BLATT,

                **Defendants.**
_____/

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE FOR PLAINTIFFS TO CONDUCT DISCOVERY

**A. Limited discovery is proper because Plaintiffs have disputed significant facts that must be determined by a jury when it decides whether Plaintiffs have agreed to the arbitration terms proffered by Defendants.**

Defendants' Opposition to Plaintiffs' Motion for Leave to Conduct Discovery claims that Plaintiffs have failed to properly dispute any facts regarding the making of the arbitration agreement proffered by Defendants. To satisfy any concern that Defendants may have about whether facts are actually in dispute, Plaintiffs provide the attached Declarations from Plaintiffs. These Declarations set forth facts in admissible form from a witness who will be able to testify to a jury about them. These Declarations remove any question that factual issues exist about the proffered arbitration agreements.

As explained in Plaintiffs' Memorandum in Support of their Motion, the factual inquiries include whether or not each Plaintiff received and agreed to the terms of the arbitration agreement such that the unsigned arbitration agreement formed part of a contract with Citibank.

Plaintiffs specifically identified in their initial Memorandum that for this first area of factual inquiry, Plaintiff Garrett contests the legal conclusion stated in Ms. Reinecke's declaration that he had agreed to a contract with Citibank that included an arbitration clause. Specifically, the proffered contract by Defendants is from 2006 and 2008 which is many years after he last used the card. The operative contract for him is his initial contract and any change of terms to which he agreed prior to 1990. Plaintiffs' have provided Citibank's dismissal with prejudice of its claim that Mr. Garrett that owed it any money. This dismissal shows that the Citibank records which Ms. Reinecke reviewed, and which were presumably the basis for its claim, were wrong.

For Ms. Martin, the only factual issue is whether the attached arbitration agreement has the current arbitration terms or whether some change in terms was sent by Citibank that modified it. The memo explained that because Ms. Martin does not have any of the arbitration agreements that Citibank has sent about this account, she does not know whether these terms are the last terms provided by Citibank. This is easily resolved by a declaration from Citibank setting forth all arbitration agreement modifications it instituted while Ms. Martin was using the account.

If Defendants are truly agents for Citibank, Defendants could have easily provided to this Court the account records for each account. Those account records should include the original contract for each Plaintiff, and any agreed change in terms to that contract. Instead of providing those records, Defendants continue to rely on the undated Declaration of Ms. Reinecke, and her legal determination after she was allowed to view those records. The factual matters could be easily resolved in discovery by Defendants providing the records that Ms. Reinecke reviewed, and allowing Plaintiffs' to use formal discovery to obtain the complete account records from Citibank. Limited discovery in this area would probably resolve any factual disputes and a jury would not be required to test Ms. Reinecke's credibility against the recollection of Mr. Martin.

### B. Limited discovery to determine the facts to present to the jury regarding whether Defendants were acting as agents for Citibank is proper.

As explained in Plaintiffs' Memorandum in Support of their Motion, factual disputes include whether Defendants were acting as agents for Citibank in sending the letters at issue. Defendants continue to erroneously insist that Plaintiffs have conceded this fact to be true, and yet Defendants can point to no such concession. The Complaint does not assert they were agents for Citibank, and Plaintiffs have provided significant and uncontested documents that show Citibank routinely sells such debts. Furthermore, Ms. Reinecke's declaration does not state that Defendants were agents of Citibank, and does not even state that Citibank is the current creditor on these accounts. The Complaint properly asserts that Defendants sought to collect a debt allegedly due Sears Gold Mastercard (Mr. Garret) and allegedly due Citibank (Ms. Martin), because that is what Defendants' debt collection letters said. In reciting what Defendants did, Plaintiffs were not agreeing that Defendants were actually working for these named entities as agents nor that the debts were actually due. Without actual evidence, neither this Court nor Plaintiffs know who actually hired Defendants and who the alleged current creditor actually is.

Defendants have the burden to prove they are the agents for Citibank and they have not done so. Before this question is put to a jury, Plaintiffs are entitled to discovery to determine the true facts regarding this assertion.

### C. Limited discovery should be allowed to determine Citibank's intent regarding the arbitration agreement it inserted in its credit agreements.

As explained in Plaintiffs' initial memorandum, under South Dakota law regarding third-party beneficiary status, Defendants' assertion of third-party beneficiary status turns in part on Citibank's intent. *See Masad v. Weber*, 772 N.W.2d 144, 153-54 (S.D. 2009). Defendants not only failed to contest the accuracy of this legal statement, they also failed to apply it.

3

In *Masad*, the South Dakota Supreme Court stated:

> SDCL 53-2-6 governs the right to enforce a contract as a third-party beneficiary. It provides: "[a] contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." SDCL 53-2-6. "This does not, however, entitle every person who received some benefit from the contract to enforce it." *Sisney v. State*, 2008 SD 71, ¶ 10, 754 N.W.2d 639, 643.
>
> The [third-party beneficiary] statute is not applicable to every contract made by one person with another for the performance of which a third person will derive a benefit; the intent to make the contract inure to the benefit of a third party must be clearly manifested. In the language of the statute, the contract must be on[e] "made expressly for the benefit of a third person."
>
> Id. (quoting *Thompson Yards v. Van Nice*, 59 S.D. 306, 308, 239 N.W. 753, 755 (1931)) (emphasis added). See also *Trouten v. Heritage Mut. Ins. Co.*, 2001 SD 106, ¶ 13, 632 N.W.2d 856, 858; *Kary v. Kary*, 318 N.W.2d 334, 336 (S.D.1982); *Fry v. Ausman*, 29 S.D. 30, 135 N.W. 708, 710 (1912). "Thus, the rule requires that at the time the contract was executed, it was the contracting parties' intent to expressly benefit the third party. And, even then, not all beneficiaries qualify: incidental beneficiaries are not entitled to third-party beneficiary status." *Sisney v. State*, 2008 SD 71, ¶ 10, 754 N.W.2d at 643. For the party claiming third-party beneficiary status to prevail, he must show "that the contract was entered into by the parties directly and primarily for his benefit." Id. (quoting *Mercado v. Mitchell*, 83 Wis.2d 17, 28, 264 N.W.2d 532, 538 (1978)). A mere showing of an incidental benefit is not sufficient. Id.

*Id.*

Defendants have not shown that the credit contracts' arbitration agreements were entered into directly and primarily for the Defendants' benefit. The language of the contract shows no such intent, and Defendants have offered no admissible evidence that Citibank's intent of the arbitration clause was to directly and primarily benefit Defendants. The absence of such evidence from Defendants' Memorandum in Support of its Motion to Compel Arbitration and from its Opposition to Plaintiffs' Motion for Leave to Conduct Discovery is some indication that no such benefit was ever intended by Citibank.

In response to Plaintiffs' Motion, Defendants continue to rely upon the *Fedotov* decision

which in turn relied on a declaration by Citibank. As with Ms. Reinecke's declaration, Plaintiffs would like an opportunity to determine the accuracy of that declaration before the Court attempts to rule on its factual assertions. Furthermore, Mr. Reinecke's declaration does not reassert the same facts as the declaration from *Fedotov*. Consequently, the underlying fact on which South Dakota law turns has not actually been proffered yet to this Court in the form of admissible evidence. For these reasons, discovery is necessary on Citibank's intent and purpose in inserting arbitration agreements in its credit contracts.

### D. Defendants have shown to basis to be relieved from their mandatory disclosure requirements of the Federal Rules of Civil Procedure.

As explained in Plaintiffs' Memorandum in Support of their Motion, under the mandatory requirement of Rule 26(a)(1)(A)(iv) of the Federal Rules of Civil Procedure, the availability of insurance and the terms of that insurance are to be shared without the necessity of a request. The Federal Rules of Civil Procedure provides a detailed list of exceptions in Rule 26(a)(1)(B), and no exception is provided for an action to compel arbitration. Under the automatic disclosure requirements of Rule 26(a)(1)(A)(iv), Plaintiffs are entitled to inspect "any insurance agreement under which an insurance business may be liable to satisfy part or all of a possible judgment in the action . . . ." In response to Plaintiffs' legal authorities, Defendants merely provide footnote 3 that seeks to write a new exception to Rule 26(a)(1)(B). Defendants have no power to decide for themselves which of the Federal Rules they choose to follow and those they choose to ignore.

Before this Court is required by Defendants to make a determination about the many issues embedded in Defendants' arbitration claim, Defendants should first be required to follow this Court's rules.

### E. Before this Court attempts to construe the words of the arbitration contract, Plaintiffs should conduct discovery regarding the factual issues about the definition of the word "we."

Under South Dakota law, the language of the entire contract must be given effect and "particular words and phrases are not interpreted in isolation." *Lillibridge v. Meade School Dist. # 46-1*, 746 N.W.2d 428, 432, S.D., 2008)(citing *In re Dissolution of Midnight Star*, 724 N.W.2d 334, 337 (S.D. 2006); *see also Jones v. Siouxland Surgery Center Ltd.,* 724 N.W.2d 340, 345 (S.D. 2006)(stating that courts are to give "reasonable, lawful, and effective meaning to all terms" of the contract). The "Court need only look to the language that the parties used in the contract to determine their intention. *Id*. "`If that intention is clearly manifested by the language of the [agreement], it is the duty of this [C]ourt to declare and enforce it.'" *In re Estate of Stevenson*, 2000 SD 24, ¶ 14, 605 N.W.2d 818, 821 (citing *Rowett v. McFarland*, 394 N.W.2d 298, 301 (S.D. 1986) (citation omitted))." *Ziegler Furniture and Funeral v. Cicmanec*, 709 N.W.2d 350, 355 (S.D. 2006).

Under South Dakota law, any ambiguities in the plain language of the agreement are to be interpreted against the drafter.

> "The question of whether a contract is ambiguous is a question of law for the court." *Buhl v. Bak*, 400 N.W.2d 903, 906 (S.D.1987). "A writing is ambiguous when it is reasonably capable of being understood in more than one sense." *Carr v. Benike, Inc.*, 365 N.W.2d 4, 6 (S.D.1985); *City of Sioux Falls v. Henry Carlson Co.*, 258 N.W.2d 676 (S.D.1977).
> . . .
> "Ambiguities arising in a contract should be interpreted and construed against the scrivener." *Forester v. Weber*, 298 N.W.2d 96, 97 (S.D.1980) (emphasis added), (citing *Henry Carlson Co.*, supra). This is a rule of construction to be applied against one who drafted an ambiguous contract. *Weisser v. Kropuenske*, 55 S.D. 558, 561, 226 N.W. 760, 761 (1929). The rule of construction does not change because the Clements' attorney reviewed the document.
> Any doubts arising from an ambiguity of language in a contract should be resolved against the speaker or writer, because they can by exactness of

expression more easily prevent mistakes in meaning than the one with whom they are dealing. *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149, 152 (S.D.1986); *Henry Carlson Co.*, supra.

*Clements v. Gabriel*, 472 N.W.2d 480, 482-83 (S.D. 1990).

As stated by the Fourth Circuit Court of Appeals, the rule of *contra preferentem* shifts the cost of any confusion in a contract on the party who caused it.

> The basic contract law principle *contra proferentem* counsels that we construe any ambiguities in the contract against its draftsman. See, e.g., *Carolina Care Plan Inc. v. McKenzie*, 467 F.3d 383, 389 (4th Cir.2006) (stating "[a]mbiguity imposes costs on the parties to a contract: one party may rely on an errant interpretation, or find its original intent flouted if a dispute arises. Contra proferentem shifts the cost of ambiguity to the party best positioned to avoid and bear it ...").

*Maersk Line, Ltd. v. U.S.*, 513 F.3d 418, 423 (4th Cir. 2008).

As this Court has previously observed, the United States Supreme Court has already decided that the rule of *contra proferentem* applies to the interpretation of arbitration agreements.

> Notwithstanding the federal policy favoring arbitration, the rule of contra proferentum applies to arbitration clauses just as to other contractual terms. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 64, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). In *Mastrobuono*, assessing two conflicting terms in an arbitration provision, the Supreme Court held that the "respondents cannot overcome the common-law rule of contract interpretation that a court should construe ambiguous language against the interests of the party that drafted it. [citations] Respondents drafted an ambiguous document, and they cannot now claim the benefit of the doubt."
> *Id.* (citing relevant state law cases). As the Supreme Court explained, "[t]he reason for the rule is to protect the party who did not choose the language from an unintended or unfair result." *Id.* (quoting, in note 10, the Restatement (Second) of Contracts 206, Comment a (1979).) Here, ambiguity is to be resolved to protect the plaintiffs, who did not choose the language of the credit card agreement

*Karnette v. Wolpoff & Abramson, L.L.P.*, 444 F.Supp.2d 640, 647 (E.D. Va. 2006).

Under the express words of the arbitration agreements proffered by Defendants, Defendants are not included as one of the people who can demand arbitration.

> *Agreement to Arbitrate*: Either you or we may, without the other's consent, elect mandatory binding arbitration for any claim, dispute or controversy between you and us (called "Claims").

The express terms of the agreements, define "we" and "us" as follows: "*we, us and our* mean Citibank (South Dakota), N.A., the issuer of your account." Therefore, applying the principles of South Dakota law that require the words and phrases of the agreement to be given their plain meaning, only Plaintiffs and Citibank could demand arbitration. As explained by the recent decision in *McGinnis v. Bonewicz,* 2012 U.S. Dist. Lexis 23833 (February 2, 2012, C.D. Ill.) debt collectors like Defendants are not included in the "we" that may demand arbitration because the contract limits the "we" to Citibank.

The contractual limitation on who may demand arbitration is then consistently applied throughout the arbitration agreement. For instance, under the clause "**How does a party initiate arbitration**" it states that the arbitration can occur "at some other place to which you and we agree in writing." This clause further provides "at any time you or we may ask an appropriate court to compel arbitration of Claims . . . ." Under "**What procedures and law are applicable in arbitration**" it states in part "we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award." Under "**Who pays?**" it states in part "If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing." Throughout the arbitration agreement, the terms "we" and "us" are used consistently to apply to the defined entity "Citibank, (South Dakota) N.A." as the corporate entity able to demand arbitration, allowed to participate in arbitration, and obligated to pay arbitration fees.

Thus, when this Court is called upon to make a ruling on Defendants' Motion to Compel

Arbitration, Plaintiffs first position regarding the arbitration clause will be that under South Dakota law, the plain meaning of the arbitration agreement does not include Defendants as a party entitled to enforce the agreement. Obviously, Defendants disagree with this assertion and claim the plain meaning is entirely opposite. Therefore, three possible legal rulings could be made by this Court in the future when deciding the Defendants' claim, and one of those rulings is that the contract is ambiguous. Until the matter is fully briefed and argued, this question is not yet before the Court. Therefore, the parties need to be prepared to come to Court with all the evidence needed if the Court determines the clause is ambiguous.

If the application of the rule of *contra preferentem* leaves this Court with such an ambiguity it cannot interpret the contract, "parol and extrinsic evidence may be used for clarification." *Lillibridge v. Meade School Dist. # 46-1*, 746 N.W.2d 428, 432, S.D. 2008)(quoting *Pauley v. Simonson*, 720 N.W.2d 665, 667-68 (S.D. 2006) quoting *Jensen v. Pure Plant Food Intern., Ltd*., 274 N.W.2d 261, 263-64 (S.D. 1979)). " "A contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct." *Alverson*, 1997 SD 9, ¶ 8, 559 N.W.2d at 235 (quoting *City of Watertown v. Dakota, Minnesota & E. R.R. Co*., 1996 SD 82, ¶ 13, 551 N.W.2d 571, 574)." *Ziegler Furniture and Funeral v. Cicmanec*, 709 N.W.2d 350, 355 (S.D. 2006). Although ambiguity is not created merely because the parties disagree on the interpretation, when the Court cannot interpret the contract "evidence must be used to determine what the intention of the parties were . . . ." *Vollmer v. Akerson*, 688 N.W.2d 225, ¶9 (S.D. 2004)(quoting *North River Ins. Co. v. Golden Rule Const. Inc.*, 296 NW2d 910, 912 (SD 1980) quoting *Delzer Const. Co. v. South Dakota State Bd. of Transp.*, 275 NW2d 352, 355 (SD 1979)). The extrinsic evidence may not be used to vary the terms of the written agreement. *See LaMore Restaurant Group, LLC v.*

*Akers*, 748 N.W.2d 756, 764 (S.D. 2008).

Defendants' Motion contains no admissible evidence other than written agreement about the parties' intent. Without conceding that Mr. Martin was ever bound by the arbitration clause, these credit contracts are quite clearly contracts of adhesion drafted exclusively by Citibank, and Defendants have provided no evidence to show the intent that some entity other than the defined people had the right to demand arbitration. Therefore, to be prepared for what this Court might rule in the future, Plaintiffs should be allowed to conduct discovery on Citibank's intent in inserting the arbitration clauses in its credit agreements.

**Conclusion**

For the reasons given above, Plaintiffs request that their Motion for Leave to Conduct Discovery be granted. This includes a time period to conduct discovery in two different areas: (1) were arbitration contracts formed between Plaintiffs and Citibank that contained the terms now proffered by Defendants, and if so, (2) are Defendants authorized to enforce those terms in this action. Also, Plaintiffs request that discovery include Defendants disclosing the insurance information required to be exchanged by Rule 26(a)(1)(A)(iv).

                                  /s/
                                Counsel for
                                Wayne D. Garrett, Jr. and
                                Tracey C. Martin

                                Dale W. Pittman, VSB#15673
                                THE LAW OFFICE OF DALE W. PITTMAN, P.C.
                                The Eliza Spotswood House
                                112-A West Tabb Street
                                Petersburg, VA 23803
                                (804) 861-6000
                                (804) 861-3368 (Fax)

Thomas D. Domonoske, VSB#35434
461 Lee Avenue
Harrisonburg, VA 22802
(540) 442-7706
tomdomonoske@earthlink.net


O. Randolph Bragg
HORWITZ, HORWITZ & ASSOCIATES
25 East Washington Street, Suite 900
Chicago, IL 60602
(312) 372-8822
rand@horwitzlaw.com


ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of March, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>David N. Anthony, Esquire
>TROUTMAN SANDERS LLP
>1001 Haxall Point
>Richmond, VA 23219
>Counsel for Defendants

/s/
Thomas D. Domonoske, VSB#35434
Counsel for Wayne D. Garrett, Jr. and
Tracey C. Martin
461 Lee Avenue
Harrisonburg, VA 22802
(540) 442-7706