IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

WAYNE D. GARRETT, JR., *et al.*,

    Plaintiff,

v.                                                                          Civil Action No. 3:11-cv-00298

MARGOLIS, PRITZKER, EPSTEIN & BLATT, P.A., *et al.*,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the defendants' motion to compel arbitration. The plaintiffs have filed a class action complaint alleging that the defendants, who are collection attorneys, violated the Federal Debt Collection Practices Act in debt collection letters. Relying on an arbitration clause in the plaintiffs' credit card agreements, the defendants' have filed a motion to compel arbitration. The Court grants the motion.

The plaintiffs' claims are subject to arbitration for the following reasons: (1) the arbitration provision in their contracts embraces a dispute of this kind; (2) the arbitration clause covers claims involving parties such as the defendants who are "connected with" Citibank; and (3) the defendants have not engaged in undue delay or burdened the plaintiffs in such a manner that the right to compel arbitration has been waived.

### I. Statement of Facts

The plaintiffs are allegedly debtors who are delinquent on Citibank credit cards. The defendants are a collections lawyer, Stuart R. Blatt, and his law firm, Margolis, Pritzker, Epstein & Blatt, P.A.P.C. The defendants sent dunning letters to the plaintiffs to collect the Citibank

debts. The plaintiffs contend that the letters violate a number of provisions of the Fair Debt Collection Practices Act. 15 U.S.C. §§ 1692 *et seq.*

The plaintiffs' credit card agreements with Citibank contain an arbitration provision. Specifically, the agreements read as follows:

### ARBITRATION

*PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.* **IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

*Agreement to Arbitrate:* Either way, you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

### *Claims Covered*

**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

. . .

**Broadest Interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

(Def.'s Mem. Supp. Motion to Dismiss or Stay Pending Arbitration, Ex. 2, Att. A, at 15–16 (emphasis in original).)

Relying on this provision of the contract, the defendants have moved to compel arbitration. The defendants are not parties to the credit card agreement, but contend that the arbitration clause covers them because they are "connected with" Citibank.

## II. Standard of Review

Under the Federal Arbitration Act ("FAA"), a party may move for an order staying proceedings and compelling the opposing party to pursue its claims through arbitration.[1] *See* 9 U.S.C. §§ 3–4. The Fourth Circuit has recently noted the Supreme Court's "healthy regard for the federal policy favoring arbitration." *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "This federal policy is based on the FAA, which establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* (citations omitted).

The Court should consider three factors in determining whether to enforce an arbitration agreement: (1) whether the parties consented to arbitration of their claim; (2) whether Congress intended to preclude arbitration in the circumstances of the case; and (3) whether arbitration provides a means to vindicate the claim that the plaintiffs have brought. *See Bennett v. Dillard's, Inc.*, 2011 U.S. Dist. LEXIS 24271, at *10–11 (E.D. Va. Mar. 10, 2011) (citing *Koridze v.*

---

[1] The Fourth Circuit has held that, as an alternative to staying a case, dismissal without prejudice is also an acceptable part of the relief when ordering arbitration. *See Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710–11 (4th Cir. 2001).

*Fannie Mae Corp.*, 593 F. Supp. 2d 863, 867 (E.D. Va. 2009); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)). Other federal Courts of Appeals apply a similar test of arbitrability. *See, e.g., See Fedotov v. Peter T. Roach & Assocs., P.C.*, 2006 U.S. Dist. LEXIS 11422, at *4 (S.D.N.Y. Mar. 17, 2006) (citing *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987) (outlining the Second Circuit's test: (1) whether the parties agreed to arbitrate; (2) whether the scope of the agreement covers the claim at issue; (3) whether Congress intended for the claim to be arbitrable; and, (4) if the court concludes that some but not all the claims in the case are arbitrable, whether to stay the proceedings pending arbitration). As noted above, if the dispute centers on the *scope* of the arbitration clause (*i.e.*, whether the particular type of dispute is to be covered by the arbitration clause), the heavy presumption of arbitrability requires a court to decide the matter in favor of, rather than against, arbitration. *See Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011).

The main controversy in this case is over the first prong of the analysis: whether the parties consented to arbitrate this claim. When courts have been satisfied by the showing of consent to an arbitration agreement, they have not resisted enforcing arbitration on an FDCPA claim such as this one. *See, e.g., Fedotov* at *10–11 (ordering arbitration on identical agreement as present here). As a result, here, as in prior FDCPA cases, the primary concern for the Court is whether the parties consented to arbitrate a claim like this.

### III. Discussion

The Court finds that the three criteria for enforcing an arbitration agreement under the FAA have been met and will therefore grant the defendant's motion. Specifically, with respect to the first prong, the parties have consented to arbitration because the contract between Citibank and the plaintiffs covers this dispute, even when the party seeking enforcement is a third party like the defendants. As to the second and third prongs, there is no reason to believe that

Congress intended to preclude arbitration in the present case or that arbitration fails to provide an adequate means of dealing with plaintiff's claims.[2]

### A. Dispute covered by original contract

The agreement embraces disputes such as this case. The arbitration clause covers "any dispute" with Citibank. It says that "[a]ll claims are subject to arbitration, no matter what legal theory they are based on. . . ." The agreement specifically includes claims such as the instant one "based on . . . statutory or regulatory provisions." The scope of the arbitration agreement is very broad. By agreeing to the credit card contract, the parties showed an intent to arbitrate the kind of claim raised in this case.

### B. Defendants covered by contract's "connected with" language

The Court next finds that a debt collector acting on behalf of Citibank, as the defendants are in this situation, is covered by the broad contract language under the heading of "whose claims are subject to arbitration." This paragraph states:

> **Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant, or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

(*See e.g.*, *id.*, Att. A, at 15.)

This provision covers the defendants. The key language of this provision is the phrase "anyone connected with us or you or claiming through us or you," which, when interpreted in a common sense manner, leads to the conclusion that a debt collector plainly acting on behalf of the original creditor may compel arbitration of a dispute. In their debt collection letter, the defendants make it clear that they are doing the bidding of Citibank. They state that they have

---

[2] The plaintiffs, for that matter, do not contend that Congress intended to preclude arbitration in cases such as this or that arbitration does not provide adequate relief to them.

"been retained by the above-referenced client in their claim against you," call themselves "professional debt collectors," and ask the recipient to submit a check or money order payable to "Citibank (South Dakota), N.A.," not directly to the debt collector. Given that the agreement allows anyone "connected with" Citibank to piggyback on the arbitration provision, a debt collector who is only one degree removed and acting at Citibank's behest has no difficulty invoking the arbitration provision.[3] *See, e.g., Fedotov v. Peter T. Roach & Assocs., P.C.*, 2006 U.S. Dist. LEXIS 11422 (S.D.N.Y. March 17, 2006).

### C. Defendants have not waived the right to compel arbitration

The defendants have not waived their right to compel arbitration by engaging in undue delay. The defendants made clear from an early stage of litigation that they intended to seek arbitration, and they did so as soon as they could confirm that an arbitration agreement governed the dispute.

The plaintiffs bear a "heavy burden" in showing that the defendants have waived their right to arbitration. *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 251 (4th Cir. 2001). "A party may waive its right to insist on arbitration if the party 'so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.'" *Id. at 250* (quoting *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985)). "But even in cases where the party seeking arbitration has invoked the 'litigation machinery' to some degree, '[t]he dispositive question is whether the party objecting to arbitration has suffered actual prejudice.'" *Id.* (quoting *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir.1987)). Neither the mere filing of pleadings nor delay will suffice by

---

[3] The agreement contains a list of covered entities. This list, following the language "such as" is merely demonstrative, not exhaustive; thus, the defendants need not establish the existence of one of the relationships specifically listed.

6

themselves to establish waiver; instead, the opposing party has to show some real, tangible prejudice. *See id.*

Here, the plaintiffs' only support comes from the defendants' filing two substantially similar motions to dismiss on the merits. While these motions are not *de minimis* litigation activities, they are in no way comparable to engaging in extensive discovery or filing a motion for summary judgment following discovery. While the motions to dismiss do constitute an invocation of the "litigation machinery," they do not, without more, show any prejudice to the plaintiffs. In short, neither the defendants' delay nor their litigation-related activities have led to the incursion of costs so significant that the plaintiffs can show prejudice at this time. The defendants have not, therefore, waived their right to arbitration and may now appropriately invoke that right.

### D. Arbitrability as an issue for arbitration

Finally, the Court notes that the plaintiffs may raise arbitrability itself as an issue before the arbitrator. The agreement states, "All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding *the application, enforceability, or interpretation of this Agreement and this arbitration provision.*" (Def.'s Mem. Supp. Motion to Dismiss or Stay Pending Arbitration, Ex. 2, Att. A, at 15 (emphasis added).) Consequently, to the extent that the plaintiffs are concerned about the rightful application of the arbitration provision to this dispute, they are not foreclosed from voicing this concern in the appropriate arbitral forum. This fact reinforces the Court's conclusion that the third prong of the FAA test for arbitration has been met, namely, that arbitration provides a means to vindicate the claim that the plaintiffs have brought. *See Koridze v. Fannie Mae Corp.*, 593 F. Supp. 2d 863, 867 (E.D. Va. 2009).

\* \* \*

In sum, the Court concludes that the arbitration agreement between the plaintiffs and Citibank embraces a dispute of this kind between these specific parties, and, therefore, the necessary consent to arbitration is present. Second, there is no reason to believe (and plaintiffs do not appear to argue) that Congress meant to preclude arbitration in the circumstances of the case. Finally, countless cases have rested on the conclusion that arbitration provides a means to vindicate an FDCPA claim, such as the one brought by plaintiffs. For these reasons, the Court is persuaded that arbitration is appropriate under the FAA.

## VI. Conclusion

For the reasons set forth above, the Court shall grant the defendants' motion to compel arbitration of the plaintiffs' claims under the Federal Debt Collection Practices Act.

The Court will enter an appropriate order.

Date: March 28, 2012
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge